Marshall E. Livihgston, J.
Two motions are herein considered under CPLR 3101. They were made by defendants Miller and Hook and by plaintiffs for an order compelling defendant Daniels Motor Freight, Inc. (Daniels), an interstate motor carrier, (1) to produce for inspection a copy of its report to the Interstate Commerce Commission (ICC) relative to the accident of September 13,1965, in suit, and (2) to produce the transcripts of a recorded interview taken of the defendant Miller and the statement or interview of the defendant Hook, if any, by defendant Daniels.
CPLR 3101 (subd. [e]) specifically provides that a ‘1 party may obtain a copy of his own statement ’ \ Therefore, defendant Daniels shall forthwith deliver to counsel for defendants Miller and Hook an accurate transcript of any recorded interview or other statement of the defendant Miller and also the same, if any were recorded or taken, of the defendant Hook.
The motion by plaintiffs for copies of these recorded interviews or statements of defendants Miller and Hook stands in *14 a different context. The affidavits submitted, which are not disputed, furnish the background for plaintiffs’ motion.
At an examination before trial, Mr. Patrick, testifying in behalf of Daniels, produced its vehicle accident report (DMF-46 Rev.), signed by Mr. Miller, the defendant driver, on September 15,1965. The report shows that it was prepared by Mr. Barnes, the “ Director of Safety & Compliance ” of Daniels, and it also refers to the “ driver’s recorded statement ” personally taken from Mr. Miller by Mr. Barnes in the course of preparing the report.
On advice of counsel at the examination before trial, Mr. Patrick declined to produce the defendant Miller’s recorded statement and also a copy of the report submitted by Daniels to the ICC, pursuant to its regulations, which he has in his possession or control.
In opposing plaintiffs’ motion for a copy of Miller’s recorded statement, defendant Daniels relies on a line of cases, such as Finegold v. Lewis (22 A D 2d 447), holding in substance that defendant’s written statements to his insurer are not available for discovery because they are material prepared for litigation (CPLR 3101, subd. [d]).
However, in both Finegold (supra) and Kandel v. Tocher (22 A D 2d 513), a distinction is made between reports to an automobile liability insurer and reports made in the regular course of business (cf. Bloom v. New York City Tr. Auth., 20 AD 2d 687).
In Kandel v. Tocher (supra) the court upheld the defendant’s motion for a protective order because there the accident reports to the carrier were made in preparation for litigation. ‘ ‘ On this view, automobile liability insurance is simply litigation insurance ” (Kandel v. Tocher, supra, p. 515). The court went on to say (pp. 515-516): “ The kind of investigation, reports, and statements involved in the performance of an insurer’s responsibility under automobile liability insurance is not to be confused with the investigation, reports, and statements resulting from the regular internal operation of an enterprise. Such material serves many purposes in the conduct of the enterprise, including perhaps eventual use in any litigation which may ensue. Thus, the material resulting from an investigation made by a public utility in connection with an accident occurring in its operation may be a part of the regular business of conducting the utility. The purpose is not limited to, or even predominantly that of, preparing for a litigation risk. On the contrary, the purpose may be to prevent future accidents, discipline careless employees, or, generally, to increase the economy and effi *15 cieney of the operation. In that situation the preclusive provisions of the disclosure statutes do not apply.”
Here the reason for plaintiffs’ motion is not so much to discover further facts as to how the accident occurred, but to be apprised of the relationship existing among Daniels, Miller and Hook in connection with the joint or several responsibility for the death of plaintiffs’ testate.
The recorded interview of the defendant Miller and the defendant Hook, if any, were made as a part of the regular course of business of Daniels by its ‘1 Director of Safety Compliance ’ ’ and thus come within the area of discoverable material to which Mr. Justice Bbeitee refers in Kandel, quoted above.
Plaintiffs’ motion for a copy of the recorded statement of defendant Miller and defendant Hook, if any, is likewise granted, and the defendant Daniels shall promptly furnish plaintiffs’ counsel with such copies.
The motions by plaintiffs and defendants Miller and Hook for a copy of the ICC report raise some interesting questions.
Daniels, through Mr. Patrick, conceded that it had a copy of the ICC report in its possession, but on counsel’s advice, refused to produce it, claiming that the report is privileged and not discoverable under the express provisions of subdivision (f) of section 320 of title 49 of the United States Code, which reads: “No report by any motor carrier of any accident arising in the course of the operations of such carrier, made pursuant to any requirement of the Commission, and no report by the Commission of any investigation of any such accident, shall be admitted as evidence, or used for any other purpose, in any suit or action for damages growing out of any matter mentioned in such report or investigation.”
Daniels contends that Linton v. Lehigh Val. R. R. Co. (25 A D 2d 334) furnishes authority for denying the demand to produce its copy of the ICC report. That ease dealt with section 47 of the Public Service Law, which provides in part: ‘ ‘ Every common carrier, railroad corporation and street railroad corporation is hereby required to give immediate notice to the commission of every accident happening upon any line of railroad or street railroad owned, operated, controlled or leased by it, in such manner as the commission may direct. Such notice shall not be admitted as evidence or used for any purpose against such common carrier, railroad corporation or street railroad corporation giving such notice in any suit or action for damages growing out of any matter mentioned in said notice.” The notice referred to in the section would appear to be synonymous with ‘8 report of accident ’ ’, as construed in Linton *16 v. Lehigh Val. R. R. Co. (25 A D 2d 334, supra). Section 47 of the Public Service Law, however, deals with common carriers, railroad and street railroad corporations. By definition the term ‘ ‘ common carrier ’ ’ does not include motor carrier of property or common carrier by motor vehicle (Public Service Law, § 2, subds. 9, 30, par. [b]).
It may be significant that article 3-B (§§ 63-1 — 63-cc) of the New York State Public Service Law relating to motor carriers does not have a provision similar to section 47.
In any event, although subdivision (f) of section 320 of title 49 of the United States Code and section 47 of the Public Service Law are similar in certain respects, the Linton case (supra) is not controlling in my view because the application of section 47 there specifically applies to railroads and not motor vehicle carriers.
The Interstate Commerce Act (U. S. Code, tit. 49), however, prevails where there is or may be a conflict pertaining to interstate commerce (32 N. Y. Jur., Interstate and Foreign Commerce, § 4). Defendant Daniels is an interstate motor carrier and is required by ICC regulations to file reports of accidents which come within the purview of subdivision (f) of section 320 of title 49 of the act, as interpreted by the Federal courts.
The Federal Buies of Civil Procedure relating to discovery are governed by rule 34, which, in substance, permits discovery of documents not privileged, upon showing good cause, upon motion of any party.
In this case the question of privilege should be passed on by the trial court. The plaintiffs and defendants Miller and Hook here have shown good cause by reason of the ‘ ‘ adequate special circumstances ” required by CPLR 3101 (subd. [a], par. [4]).
The special circumstances relate to defendant Daniels ’ relationship with defendants Miller and Hook in connection with the leasing agreement of the power unit and trailer involved. The circumstances relate not only to the agreement itself, a copy of which is purported to be attached to the complaint, but also to the practice among defendants Daniels, Miller and Hook regarding responsibility for an outfit deadheading after freight has been delivered to the consignee. This situation is indicated in Daniels’ accident report form signed by Mr. Miller.
These circumstances are particularly special insofar as the plaintiffs are concerned for they have no knowledge whatsoever of these arrangements, and it is most important in proving responsibility. The report to ICO could conceivably indicate what the claim of Daniels is in this regard.
*17 Plaintiffs and defendants Miller and Hook must be made aware of the contents of this report, and the questions of whether or not the report is privileged and what portion of the report, if any, is admissible should be decided by the court upon the trial (cf. La Chance v. Service Trucking Co., 215 F. Supp. 159; Goosman v. A. Duie Pyle, Inc., 320 F. 2d 45).